IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| CHERYL LOUISE BASSETT,<br><br>    Plaintiff,<br><br><br><br><br>    vs.<br><br><br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND<br>ORDER ON ADMINISTRATIVE<br>APPEAL<br><br><br><br><br>Case No. 1:13-CV-7 TS |

This matter comes before the Court on Plaintiff Cheryl Louise Bassett's appeal from the

decision of the Social Security Administration denying her application for disability insurance

benefits. Having considered the arguments of the parties, reviewed the record and relevant case

law, and being otherwise fully informed, the Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to

determining whether its findings are supported by substantial evidence and whether the correct

legal standards were applied.[1]  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]  The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

## II.  BACKGROUND

### A.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in June 2010, alleging disability beginning December 2009.[7]  The claim was denied initially on September 29, 2010,[8] and upon reconsideration on February 8, 2011.[9]  Plaintiff then requested a hearing before an ALJ,

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3] *Id.*

[4] *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5] *Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[7] R. at 155–64.

[8] *Id.* at 77, 83–86.

[9] *Id.* at 80, 88–90.

which was held on March 21, 2012.[10]  The ALJ issued a decision on June 1, 2012, finding that

Plaintiff was not disabled.[11]  The Appeals Council denied Plaintiff's request for review on

November 13, 2012.[12]  Plaintiff then filed the instant action.

B.      MEDICAL HISTORY

In May 2008, Plaintiff attempted suicide by attempting to drive her car over a cliff.[13]

Plaintiff was admitted to a locked psychiatric unit where she stayed for five days.[14]  She was

diagnosed with major depressive disorder, anxiety disorder, and hypertension.[15]

Plaintiff again attempted suicide in November 2008.[16]  She wrote a suicide note and was

found by a family member covered in blood after she cut her neck, arm, and chest in an attempt

to cut out her heart.[17]  Plaintiff was again hospitalized for a number of days.[18]  She was diagnosed

with major depressive disorder and hypertension.[19]

---

[10]*Id.* at 28–76.

[11]*Id.* at 14–27.

[12]*Id.* at 1–3.

[13]*Id.* at 281–89.

[14]*Id.* at 287–89.

[15]*Id.* at 288.

[16]*Id.* at 297–300.

[17]*Id.* at 297.

[18]*Id.* at 305–07.

[19]*Id.* at 307, 312.

After this suicide attempt, Plaintiff's employer requested an evaluation to determine whether Plaintiff could return to work. Plaintiff was evaluated by James A. Bird, Ph.D., in December 2008.[20] Dr. Bird noted that Plaintiff's "history and psychological assessment are consistent with major depression disorder."[21] Dr. Bird stated that Plaintiff "has the inherent intelligence, work ethic, and leadership ability to be a reliable and effective employee."[22] However, because of her depression, Dr. Bird found that it was "not advisable for her to return to work at this time."[23]

On May 21, 2009, Plaintiff presented to the Ogden Clinic with complaints of a cough.[24] Plaintiff was diagnosed with acute bronchitis superimposed on chronic lung disease, with evidence of chronic obstructive lung disease ("COPD").[25] Plaintiff was advised that she had the lungs of a ninety-nine-year-old and that she needed to stop smoking.[26]

Plaintiff began having knee problems in 2009. Ultimately Plaintiff had total knee replacements on both knees: the left knee in May 2010 and the right in July 2010.[27] In addition,

---

[20] *Id.* at 743–50.

[21] *Id.* at 748.

[22] *Id.* at 750.

[23] *Id.*

[24] *Id.* at 408.

[25] *Id.* at 409.

[26] *Id.*

[27] *Id.* at 462–74.

Plaintiff repeatedly sought treatment for edema (swelling) in both legs.  Plaintiff was also diagnosed with hypertension and renal insufficiency.

In December 2009, Plaintiff's alleged onset date, Plaintiff was admitted to the hospital complaining of chest pain and shortness of breath.[28]  Plaintiff "required critical care due to the acute impairment of vital organ systems (respiratory) and a high probability of imminent and life threatening deterioration.  Multiple emergent interventions were required to prevent sudden life threatening deterioration."[29]  A CT scan revealed multiple bilateral pulmonary emboli (blockages in the arteries of the lungs).[30]  Plaintiff remained hospitalized for a number of days.  Upon discharge, Plaintiff was advised to stop smoking and was prescribed Coumadin.[31]

In January 2010, Plaintiff again became suicidal.  Plaintiff contacted a crisis hotline threatening to overdose on Lortab or cut herself with a razor blade.[32]  Police were called and Plaintiff was brought to the hospital.  Plaintiff was later transferred to another hospital for psychiatric care.[33]

---

[28]*Id.* at 335.

[29]*Id.* at 350.

[30]*Id.* at 333.

[31]*Id.* at 334.

[32]*Id.* at 291–93.

[33]*Id.* at 293.

On September 2, 2010, Mark D. Corgiat, Ph.D., examined Plaintiff and reviewed her medical records.[34] Dr. Corgiat noted that Plaintiff had a prominent history of depression with probable borderline personality disorder.[35] Dr. Corgiat also noted that Plaintiff had difficulty ambulating.[36] Dr. Corgiat diagnosed Plaintiff with major depressive disorder, pain disorder, and borderline personality disorder.[37] Dr. Corgiat opined that Plaintiff's attention, concentration, memory, learning, calculation abilities, and abstract thinking were all normal.[38]

On September 16, 2010, Dr. Michael Sumko performed ankle surgery on Plaintiff, removing hardware previously implanted due to an ankle injury.[39]

On September 21, 2010, Dr. Dennis Taggart completed a physical residual functional capacity ("RFC") assessment on Plaintiff as part of her disability claim.[40] Dr. Taggart opined that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight-hour workday, and sit for about six

---

[34]*Id.* at 534–38.

[35]*Id.* at 537.

[36]*Id.*

[37]*Id.*

[38]*Id.* at 536.

[39]*Id.* at 543–44.

[40]*Id.* at 547–54.

hours in an eight-hour workday.[41]  He further opined that Plaintiff could occasionally climb,

balance, stoop, kneel, crouch, and crawl.[42]

On September 28, 2010, Joan Zone, Ph.D., completed a psychiatric review technique and

a mental RFC assessment.[43]  Dr. Zone opined that Plaintiff had mild restrictions in her activities

of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in

maintaining concentration, persistence, or pace; and one or two episodes of decompensation,

each of extended duration.[44]  In the mental RFC assessment, Dr. Zone opined that Plaintiff was

moderately limited in her ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods.[45]  Dr. Zone also opined that Plaintiff was

moderately limited in her ability to accept instructions and respond appropriately to criticism

from supervisors.[46]  Dr. Zone stated that Plaintiff should "be able to deal with at least semi-

skilled work."[47]

---

[41]*Id.* at 548.

[42]*Id.* at 549.

[43]*Id.* at 557–70, 571–74.

[44]*Id.* at 567.

[45]*Id.* at 572.

[46]*Id.*

[47]*Id.* at 573.

Between October and December 2010, Plaintiff sought treatment a number of times due to leg and foot pain. On December 13, 2010, it was noted that Plaintiff

> has trouble with stairs, standing long periods of time, walking long distances, and has occasions where it feels like her foot goes out on her, causing her to stumble. She has tried antiinflammatories, rest, ice, has worn stockings, and even had hardware removal in September of 2010, by Dr. Sumco. None of these things, unfortunately, have changed her course.[48]

An MRI showed osteoarthritis in the tibia talar and talonavicular joints.[49] A vascular ultrasound revealed no deep or superficial venous thrombus of the right lower extremity.[50] Thrombus in the calf vessels could not be excluded.[51]

Another MRI was conducted on December 27, 2010. The MRI showed

> a posterior tibialis split tear. The flexor retinaculum and deltoid are stripped off the malleolus. There is an ATFL tear, a CFL tear. She has anterolateral ankle debris with possible loose body in there. There is arthritis of her talonavicular and her naviculocuneiform, as well as her tibiotalar joints. There is minimal arthritis at the posterior aspect of the subtalar joint.[52]

An injection was recommended to relieve the pain.[53]

---

[48]*Id.* at 649.

[49]*Id.* at 653.

[50]*Id.* at 654.

[51]*Id.*

[52]*Id.* at 646.

[53]*Id.*

On January 4, 2011, Dr. Christopher Kim completed a physical ability assessment form.[54] Dr. Kim stated that Plaintiff could sit frequently and could occasionally stand, walk, climb stairs or ladders, and use foot controls.[55]  No other limitations were noted.

In February 2011, non-examining state agency physicians David Peterson, M.D., and Robert Finley, Ph.D., reviewed the record and affirmed the prior opinions of Drs. Taggart and Zone.[56]  Dr. Peterson stated that the "[m]edical evidence continues to indicate that [Plaintiff] is capable of seated light work."[57]  Dr. Finley stated that the  "[m]edical evidence continues to indicate that [Plaintiff] is capable of semi-skilled work."[58]

On August 5, 2011, Plaintiff was seen by Dr. Gaurav Aggarwala at Utah Cardiology. Plaintiff reported chest discomfort and "significant lower extremity discomfort with severe bilateral lower extremities swelling."[59]  Dr. Aggarwala prescribed therapeutic compression stockings and diuretic therapy.[60]  He also recommended elevation of the extremities and to avoid prolonged standing.[61]

---

[54]*Id.* at 867–68.

[55]*Id.*

[56]*Id.* at 616–18.

[57]*Id.* at 616.

[58]*Id.* at 618.

[59]*Id.* at 839.

[60]*Id.* at 840.

[61]*Id.*

On September 12, 2011, Plaintiff was again seen at Utah Cardiology to follow up on an echocardiogram.[62]  Plaintiff again complained of chest discomfort and lower extremity discomfort and swelling.[63]  Plaintiff was prescribed therapeutic compression stockings and was recommended a salt restricted diet.[64]  Frequent elevation of the extremities and avoidance of prolonged standing was also recommended.[65]

C.    HEARING TESTIMONY

At the administrative hearing, Plaintiff testified that she had difficulty breathing and had been diagnosed with COPD.[66]  Plaintiff also detailed her knee replacement surgeries and the surgery on her right ankle.[67]  Plaintiff testified that she could walk with the assistance of crutches, but would be unable to walk even half a block without them.[68]  Plaintiff testified that she was unable to put weight on her foot.[69]  Plaintiff later testified that she was unable to afford treatment with regard to her foot/ankle issues.[70]

---

[62]*Id.* at 836.

[63]*Id.*

[64]*Id.* at 837.

[65]*Id.*

[66]*Id.* at 40.

[67]*Id.* at 41.

[68]*Id.* at 42.

[69]*Id.*

[70]*Id.* at 54–56.

Plaintiff explained that she had difficulty ambulating and that it could take her nearly three hours to get ready.[71]  Plaintiff testified that she could only sit comfortably for twenty to thirty minutes at a time and could stand for roughly the same amount of time.[72]  Plaintiff stated that sometimes her edema would get to the point where she could not walk or stand.[73]

Kendrick Morrison, M.D., testified at the hearing.  Dr. Morrison testified that he had received and reviewed all of Plaintiff's medical records in preparation for the hearing.[74]  Dr. Morrison opined that neither Plaintiff's pulmonary problems nor her knee replacements would result in disability.[75]  Dr. Morrison further stated that there were insufficient medical records to opine as to Plaintiff's ability to work due to her ankle/foot injury.[76]

A vocational expert, James Cowart, also testified at the hearing.  In response to a hypothetical from the ALJ, Mr. Cowart testified that the hypothetical person could perform sedentary work and provided two examples of jobs that person could perform.[77]

---

[71]*Id.* at 57.

[72]*Id.* at 58–59.

[73]*Id.* at 59.

[74]*Id.* at 45.

[75]*Id.* at 50–51.

[76]*Id.* at 51.

[77]*Id.* at 70–71.

D.     POST-HEARING EVIDENCE

After the administrative hearing, Ronald Houston, Ph.D., completed a psychiatric review technique.[78] Dr. Houston noted the categories of mental impairments included 12.04 affective disorders, 12.06 anxiety-related disorders, 12.08 personality disorders, and 12.09 substance addiction disorders.[79] Dr. Houston opined that Plaintiff had moderate difficulties in maintaining social function and in maintaining concentration, persistence, or pace without alcohol use, but marked difficulties with alcohol use.[80] Dr. Houston found no episodes of decompensation without alcohol use, but three with alcohol use.[81] Dr. Houston stated that Plaintiff's impairments were not severe in the absence of alcohol and that "[t]he severity of all mental impairments including her personality disorder can be expected to improve in the absence of her binge drinking.[82]

A psychological evaluation was conducted by Ralph W. Gant, Ph.D., on April 20, 2012.[83] Dr. Gant diagnosed Plaintiff with posttraumatic stress disorder, generalized anxiety disorder, panic disorder with agoraphobia, major depressive disorder, cognitive disorder, alcohol

---

[78]*Id.* at 870–904.

[79]*Id.* at 870.

[80]*Id.* at 880.

[81]*Id.*

[82]*Id.* at 870, 884.

[83]*Id.* at 849–66.

dependence, and borderline functioning.[84]  Dr. Gant rated Plaintiff's limitations as marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies in concentration, persistence, and pace; and repeated episodes of decompensation within a twelve-month period.[85]  He further opined that "[g]ive[n] Ms. Bassett's conditions in combination it is the judgment of this examiner that she will not be able to work for a minimal period of one year, with the greater likelihood that she may require much more time to recover from her circumstances and prepare herself for vocational rehabilitation."[86]

E.      THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 29, 2009, the alleged onset date.[87]  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post right ankle surgery, status post total left knee replacement, status post total right knee replacement, COPD, pulmonary emboli, depression, and anxiety.[88]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[89]  After

---

[84]*Id.* at 858–59.

[85]*Id.* at 858.

[86]*Id.*

[87]*Id.* at 16.

[88]*Id.*

[89]*Id.* at 17.

determining Plaintiff's RFC, the ALJ found, at step four, that Plaintiff was unable to perform any of her past relevant work.[90] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[91]

F.    ADDITIONAL EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

The Appeals Council received additional evidence, which it made part of the record.[92] The Appeals Council ultimately denied Plaintiff's request for review.

### III.  DISCUSSION

Plaintiff raises the following issues in her brief: (1) that the ALJ erred in failing to find certain impairments to be severe impairments and to consider their effects in combination with her other severe impairments; (2) the ALJ failed to properly consider the medical opinions; and (3) the ALJ erred in determining that Plaintiff had the RFC to perform sedentary work.

A.    STEP TWO ANALYSIS

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post right ankle surgery, status post total left knee replacement, status post total right knee replacement, COPD, pulmonary emboli, depression, and anxiety. Plaintiff argues that the ALJ erred in failing to find Plaintiff's hypertension, edema, renal insufficiency, and midfoot osteoarthritis to also be severe impairments.

---

[90]*Id.* at 25.

[91]*Id.* at 26–27.

[92]*Id.* at 4, 276–79, 905–55.

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[93] A claimant must make only a de minimis showing for her claim to advance beyond step two of the analysis.[94] However, "a mere presence of a condition is not sufficient."[95] Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity."[96]

In this case, the Court need not determine whether the ALJ erred in finding that Plaintiff's hypertension, edema, renal insufficiency, and midfoot osteoarthritis were not severe because any error was harmless. The Tenth Circuit has held that an error at step two is harmless when the ALJ goes on to consider the effects of those impairments at the later steps in the sequential evaluation.[97]

In this case, the ALJ went on to consider all but one of these impairments in his assessment of Plaintiff's RFC. As to the one impairment not discussed, renal insufficiency, the medical evidence shows that this impairment was mild and was related to her hypertension, which the ALJ did specifically discuss. As a result, the Court finds that the ALJ considered these

---

[93]20 C.F.R. §§ 404.1520(c), 416.920(c).

[94]*Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[95]*Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

[96]*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[97]*See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

impairments at steps four and five of the sequential process and any error at step two was harmless.

B.      MEDICAL OPINION EVIDENCE

Plaintiff next argues that the ALJ failed to properly consider the medical opinions. Specifically, Plaintiff argues that the ALJ failed to accord appropriate weight to the opinion of Dr. Gant.  Further, Plaintiff argues that the ALJ gave too much weight to the opinions of Drs. Morrison and Kim.

The ALJ, in reviewing the opinions of treating sources, must engage in a sequential analysis.[98]  First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[99]  If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[100]  If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[101]

This does not end the analysis, however.  Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[102]  Those factors include:

---

[98]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[99]*Id.*

[100]*Id.*

[101]*Id.*

[102]*Id.*

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[103]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[104] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[105]

As discussed, Plaintiff was examined by Dr. Gant on April 20, 2012.[106] Dr. Gant diagnosed Plaintiff with posttraumatic stress disorder, generalized anxiety disorder, panic disorder with agoraphobia, major depressive disorder, cognitive disorder, alcohol dependence, and borderline functioning.[107] Dr. Gant rated Plaintiff's limitations as marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies in concentration, persistence, and pace; and repeated episodes of decompensation within a twelve-month period.[108]

---

[103]*Id.* at 1301 (quoting *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[104]*Id.*

[105]*Id.*

[106]R. at 849–66.

[107]*Id.* at 858–59.

[108]*Id.* at 858.

The ALJ gave Dr. Gant's opinion little weight. The ALJ found that Dr. Gant's opinions were largely inconsistent with the medical record. The ALJ noted that Dr. Gant opined that Plaintiff would be marked in her limitations in all areas, but failed to differentiate whether this was with alcohol use or without, as Dr. Houston had done. The ALJ further noted that while Plaintiff told Dr. Gant that she was a light drinker, Dr. Gant did not acknowledge that she was generally seen at the hospital or that she attempted suicide after drinking. The ALJ finally noted that Dr. Gant's opinion was also inconsistent with that of Dr. Corgiat.

Plaintiff argues that the ALJ's treatment of Dr. Gant's opinion was insufficient because the ALJ did not specifically articulate the reasons why he gave Dr. Gant's opinion little weight. The Court disagrees. The ALJ specifically noted that Dr. Gant's opinion was largely inconsistent with the medical record. While Plaintiff faults the ALJ for failing to cite to specific medical records, the Court notes that Dr. Gant's opinion was inconsistent with all other experts who opined about Plaintiff's mental capabilities. The Court further notes that the ALJ found that Dr. Gant's opinion was inconsistent with the opinions of Drs. Houston and Corgiat. Such inconsistencies provide a basis for the ALJ to accord Dr. Gant's opinion less weight.[109] Based upon this, the Court finds that the ALJ adequately explained why he chose to give little weight to Dr. Gant's opinion.

Plaintiff further takes issue with the fact that the ALJ discounted Dr. Gant's opinion because Dr. Gant did not differentiate whether the marked limitations would persist both with or without alcohol use. Plaintiff argues that "[u]nder Social Security Ruling ("SSR") 13-2p, if there

---

[109] *See Watkins*, 350 F.3d at 1301.

18

is medical evidence of a substance use disorder, ("DAA") the ALJ must determine if the substance use disorder is a contributing factor material to the determination of disability."[110] Plaintiff argues that "the ALJ failed to complete the proper DAA analysis, but instead shortcut the process by negatively referencing her alcohol use and discounting the conclusive opinion of disability."[111]

Plaintiff's argument misses the point. SSR 13-2p concerns "whether DAA is 'material' to the finding that the claimant is disabled."[112] In this case, the ALJ was not determining whether Plaintiff's alcohol use was material. Rather, the ALJ was considering an examining physician's failure to consider Plaintiff's alcohol use in determining the appropriate weight to give that opinion. Doing so is consistent with the factors listed above.

Plaintiff next argues that the ALJ erred in his treatment of Dr. Morrison's opinion. The ALJ found that Dr. Morrison's opinion was consistent with the medical record and, though his opinion was not entitled to controlling weight because he was not a treating physician, it was highly persuasive and given great weight.[113] Plaintiff argues that Dr. Morrison's opinion, as a non-examining physician, is entitled to less weight.

"The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is

---

[110]Docket No. 13, at 19.

[111]*Id.* at 20 (internal citation omitted).

[112]SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013).

[113]R. at 23.

entitled to the least weight of all."[114]  The ALJ properly noted that Dr. Morrison's opinion was not entitled to controlling weight, but was given great weight because it was consistent with the medical records.  Plaintiff argues that the ALJ should have discussed the contradiction between Dr. Morrison's opinion that Plaintiff did not have ambulation problems and Plaintiff's own complaints concerning her ability to ambulate.  However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible when the complete medical record is reviewed and considered."[115]  As will be discussed, this finding is supported by substantial evidence.  Therefore, the Court finds that the ALJ properly evaluated Dr. Morrison's opinion.

Finally, Plaintiff argues that the ALJ should not have given great weight to Dr. Kim's assessment of Plaintiff's physical abilities because Dr. Kim is a cardiologist.  Whether the physician is a specialist in the area upon which an opinion is rendered is one of the facts the ALJ is to consider in evaluating medical opinion testimony.  But it is only one factor.  While Plaintiff takes issue with the fact that Dr. Kim was a cardiologist, she points to nothing suggesting that Dr. Kim was not qualified to evaluate Plaintiff's physical abilities.  Further, Dr. Kim's opinion was consistent with the ALJ's RFC determination, which is supported by substantial evidence.  Therefore, the Court cannot find that the ALJ erred in considering Dr. Kim's opinion.

---

[114]*Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

[115]R. at 20.

C.    RFC DETERMINATION

Plaintiff first argues that the ALJ failed to consider all of Plaintiff's impairments, along with their respective limitations or restrictions, in making his RFC determination.  Plaintiff fails to specifically identify which impairments the ALJ allegedly failed to consider.  If Plaintiff is referring to those impairments which the ALJ did not find as severe at step two, the Court would note that the ALJ discussed each impairment except renal insufficiency.  Plaintiff has made no argument that the failure to consider this impairment changes the RFC determination.

Plaintiff next argues that the ALJ failed to adequately consider Plaintiff's pain in determining Plaintiff's RFC.  In his decision, the ALJ found that Plaintiff's complaints of pain were not fully credible.

Social Security Ruling 96-7p sets out relevant factors an ALJ should consider in determining credibility.  These include:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[116]

---

[116]SSR 96-7p, 1996 WL 374186 (July 2, 1996).

In determining credibility, the ALJ must consider the entire case record.[117]  However, the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility . . . ."[118]  An ALJ's "credibility determinations are peculiarly the province of the finder of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence."[119]

The ALJ noted that Plaintiff alleged that she was unable to walk, drive, climb stairs, or get into a vehicle because of her knees.  Plaintiff further alleged difficulty with daily chores, as well as sleep.  Plaintiff also alleged difficulty sitting, standing, walking, bending, climbing stairs, and lifting.  Plaintiff alleged difficulties in concentration and focus.  Plaintiff further alleged depression, frustration, crying spells, and lack of motivation and desire.  At the hearing, Plaintiff testified that she had been required to use crutches and could not walk without them.  Plaintiff stated that it took her approximately three hours to get ready for the day because of her inability to maneuver.  Plaintiff testified that she could not sit or stand for more than twenty minutes at a time.  Plaintiff further testified that she did not get out of bed seven or more times per month due to her physical and mental impairments.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible when the complete medical record is

---

[117]*Id.*

[118]*Qualls*, 206 F.3d at 1372.

[119]*Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995).

reviewed and considered."[120]   In making this determination, the ALJ closely examined each

alleged impairment.  With regard to Plaintiff's COPD and pulmonary emboli, the ALJ noted that

Plaintiff smoked for over thirty-three years and continued to smoke despite being told she should

quit.  The ALJ further noted that Plaintiff's clots were resolved with medication and that there

were no indications that Plaintiff had further pulmonary emboli.

The ALJ next considered Plaintiff's knee impairments, noting that the record reflected

that Plaintiff's knee surgeries were generally successful at relieving her pain.  The ALJ noted that

the record revealed similar success with regard to Plaintiff's right ankle surgery.  The ALJ also

reviewed the medical records concerning Plaintiff's foot pain.  The ALJ noted that an injection

was recommended, but that Plaintiff never scheduled an injection.  The ALJ concluded that

"[t]his suggests that the alleged symptoms and limitations may have been overstated as the

claimant no longer sought treatment."[121]   Further, though Plaintiff complained of limiting pain,

she had not taken any narcotic-based pain medications.

Turning to her mental limitations, the ALJ noted that Plaintiff largely discontinued

treatment and medication.  From this, the ALJ concluded that the symptoms and limitations may

have been overstated and not as limiting as reported.  Additionally, the ALJ noted inconsistent

statements that Plaintiff had given to her treatment providers.  The ALJ stated that "[a]lthough

the inconsistent information the claimant provided may not be the result of a conscious intention

---

[120]R. at 20.

[121]*Id.* at 22.

23

to mislead, the inconsistencies nevertheless suggest that the information the claimant provided may not be entirely reliable."[122]

The Court finds that the ALJ properly considered Plaintiff's credibility and there is substantial evidence to support the ALJ's conclusions that Plaintiff's statements concerning her limitations were not fully credible. Specifically, the ALJ considered Plaintiff's claims and the medical evidence concerning those claims. The ALJ further considered the treatment Plaintiff received and the success of certain treatments Plaintiff received, such as her knee and ankle surgeries. The ALJ also considered Plaintiff's failure to seek treatment for allegedly limiting impairments, the conservative treatment prescribed for her impairments, and Plaintiff's failure to comply with recommended treatment. Based on these things, the Court finds that the ALJ's determination concerning Plaintiff's credibility is legally correct and supported by substantial evidence.

Finally, Plaintiff argues that the ALJ failed to adequately complete a function-by-function assessment of Plaintiff's RFC. The ALJ in this case did, however, provide a function-by-function analysis. Specific, affirmative medical evidence as to each and every work-related task is not required for an ALJ to determine a claimant's RFC.[123] Therefore, this argument must be rejected. Plaintiff also argues that there is not substantial evidence to support the ALJ's RFC assessment, but does not specifically state what portion of the RFC analysis is not supported. As a result, the Court cannot properly analyze this argument.

---

[122]*Id.*

[123]*See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court finds that the ALJ's evaluation and ruling is supported by substantial evidence. Therefore, the Commissioner's findings must be affirmed. Further, the Court finds that the ALJ applied the correct legal standard in determining that Plaintiff is not disabled.

For the reasons just stated, the Court hereby AFFIRMS the decision below. The Clerk of the Court is directed to close this case forthwith.

DATED  November 15, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge